IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE CRIMINAL COMPLAINT AND ARREST WARRANT FOR ANDERSON JOSUE MARTINEZ-MONTENEGRO | Case No. 25-mj-03120 |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

I, Michael J. McIsaac, a Deportation Officer with the Department of Homeland Security, Immigration and Customs Enforcement, Enforcement and Removal Operations (ERO), being duly sworn, depose and state as follows:

### PURPOSE OF THE AFFIDAVIT

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant charging **ANDERSON JOSUE MARTINEZ-MONTENEGRO** with 18 U.S.C. § 111 (Assaulting, resisting, or impeding certain officers or employees). Based on the facts set forth in this affidavit, there is probable cause to believe that **MARTINEZ-MONTENEGRO** has committed the **TARGET OFFENSE.**

### AFFIANT BACKGROUND

2. I am a Deportation Officer with the United States Immigration and Customs Enforcement ("ICE") and have served in that capacity since June 16, 2024. I am authorized by law to interrogate, arrest, search, and seize aliens who are unlawfully present in the United States pursuant to Title 8, United States Code, Section 1357.

3. Prior to serving with ICE, I served as a Border Patrol Agent with the Department of Homeland Security, United States Border Patrol ("USBP"), and was so employed from June 11, 2009, to June 15, 2024. While employed with the USBP, from July 2019 to June 2024, I worked

1

as a cross designated detective for the North Central Washington Narcotics Task Force in both a part time and full-time capacity. From June 2019 to September 2021, I worked as the Border Patrol Agent-Intelligence ("BPA-I") with the Spokane Sector Intelligence Unit ("SIU") assigned to the Oroville Station Area of Responsibility. From October 2018 to June 2019, I was assigned as the Oroville Station Lead Prosecutions Agent. From July 2018 to October 2018, I was assigned as the Criminal Alien Program Agent at the Oroville, Station. Between February 2016 and January 2018, I was a Supervisory Border Patrol Agent ("SBPA") assigned to the Fort Brown Station in Brownsville, Texas. Between June 2011 and February 2016, I worked as a Border Patrol Agent (BPA) for the Fort Brown Station in Brownsville, Texas. During my time as a Border Patrol Agent, I have interdicted numerous attempts of international smuggling of controlled substances as well as numerous cases involving human smuggling. I have received specialized law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico. I have been trained in interdiction techniques of narcotics and human smuggling, interviewing and interrogation techniques, and intelligence gathering techniques from the U.S. Border Patrol. As a Border Patrol Agent and as a Deportation Officer, I have participated in and initiated numerous immigration-based investigations, to include human smuggling/trafficking, fraudulent documents sales, 1326 illegal re-entry, and other various immigration investigations.

4.  I am fluent in the Spanish language and have received extensive training and education in Spanish. I successfully completed four years of Spanish education at Hillcrest High School in Idaho Falls, Idaho (1997-2001). From 2002 to 2004, I served a Spanish speaking service mission in southern Texas. During my two years as a Spanish speaking missionary, I lived exclusively within Spanish speaking communities and approximately 95% of my communications (both written and verbal) were conducted in Spanish. Due to my proficiency in the Spanish language, I was tasked with teaching Spanish to incoming missionaries. Additionally, I was

frequently paired with missionaries whose only language was Spanish. I was tasked with teaching them English and performing all other trainings for them in the Spanish language. I was frequently tasked with translation, both verbal and written. I was frequently used as a translator during meetings and would often translate multiple hours of conversation as it was received (in real time) both from Spanish to English and English to Spanish. In 2004, I took the Spanish Language College Level Examination Program (CLEP) test at Idaho State University and was awarded the maximum amount of Spanish credits (achieving a near perfect score). I then attended Idaho State University and earned several more credits for upper-level Spanish, both in Spanish literature and grammar. In the upper division Spanish courses, I was required to read novels in the Spanish language and discuss and report on them in depth, also in the Spanish language. Between 2004 and 2006, I worked on the Spanish phone lines for Melaleuca. I worked exclusively with Spanish speaking customers. At the Border Patrol Academy, my Spanish skills were tested, and I received the highest score within my class (98%). I have extensive experience working with different accents in Spanish. I am comfortable with different terminology used in different Spanish speaking countries. I have travelled to several Spanish speaking countries and have conducted all communication in those countries in the Spanish language. Since my employment with CBP in 2004, and continuing with ICE 2016, to the present day, I have continued to use Spanish almost daily to interpret conversations with witnesses, victims and suspects, and as part of my investigative work.

     5.     I have set forth only the facts that I believe are necessary to establish probable cause for the warrant sought herein. The information contained in this affidavit is based upon my personal knowledge, my review of documents, body worn camera (BWC) video and official reports provided by Salisbury ICE/ERO officers, and my conversations with the deportation officers involved.

3

6. Because I have submitted this affidavit for the limited purpose of establishing probable cause, I have not included every detail of every aspect of this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

7. This affidavit is submitted in support of a criminal complaint for Anderson Josue MARTINEZ-MONTENEGRO, charging him with Assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C § 111.

## PROBABLE CAUSE

8. The Defendant is a citizen and national of Guatemala, and not a native, citizen, or national of the United States.

9. MARTINEZ-MONTENEGRO entered the United States at an unknown date and time, at which time he was in violation of 212 (a) (6) (A) (i) of the Immigration and Nationality Act and was "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."

10. Probable cause exists for the three elements necessary to charge 18 U.S.C. § 111 as follows:

    a. All officers and special agents involved in this enforcement effort are officers and employees of the United States or of any agency in any branch of the United States Government as defined in 18 U.S. Code § 1114.

    b. All special agents were at the time of these events operating as federal law enforcement officials engaged in carrying out official duties to include Title 8 immigration enforcement as directed.

c. Pursuant to 18 U.S.C. §·111(a)(1) the defendant committed at least one of the following acts: forcibly assaulted, resisted, opposed, impeded, intimidated **OR** interfered with ICE officers who were engaged in or on account of the performance of official duties.

11. On November 29, 2025, at approximately 8:30 a.m., EST, ERO Baltimore Deportation Officers (DO) were following a vehicle south on Route 13 in Salisbury, Maryland. A record check of the vehicle's tag indicated that it was registered to a foreign national. Before conclusive checks could be completed to establish reasonable suspicion for a vehicle stop, the vehicle pulled into a construction site at 828 S Salisbury Boulevard, Salisbury, Maryland, 21801. Officers initiated a consensual encounter with all occupants, establishing alienage for all three, and removability on two of the occupants. Officers detained Johnathan Mamani-Gutierrez, a citizen and national of Bolivia who entered without admission or inspection into the United States. Supervisory Detention and Deportation Officer (SDDO) D.G. secured Mamani-Guitierrez in his vehicle parked on Register Street, when a second vehicle entered the parking lot adjacent to the previous encountered vehicle, at approximately 8:40 a.m. SDDO D.G. observed a male occupant, who upon seeing law enforcement markings, slumped down in the front passenger side area of the vehicle, bringing his arm up to obscure his face. SDDO D.G. instructed the other DOs to make contact with the vehicle. The driver and occupants were not compliant with requests to identify themselves or roll down their windows. DO C.T. conducted a database search on the vehicle, a white Ford F-150 with Maryland tag: 1EN8140, that is registered to Francisco Alvarado. Alvarado's Maryland driver's license has an AU code. The AU code is a denotation from the Maryland Motor Vehicle Administration that the identification card or license "may not be used

to purchase a firearm" and "not acceptable for federal purposes."[1] These restrictions are clear indicators to an individual's unlawful presence in the United States, in those who (foreign nationals) are lawfully admitted with non-immigrant visas, are issued Maryland driver's license with a T (temporary term) restriction. Additionally, searches revealed Alvarado had submitted an Application to Register as a Permanent Resident, I-485, that was denied in 2013 by United States Citizenship and Immigration Services which serves as another indicator that Alvarado lacked lawful immigration status to be in, or remain, in the United States. After being asked several times to roll down his window, Alvarado passed his driver's license through a crack in the window, confirming his identity to officers. DO N.A. instructed Alvarado to exit the vehicle, as he was not free to leave until the officer's reasonable suspicion could be resolved, and his failure to roll his window down and answer immigration inspection questions was impeding the officer's investigation.

12. DO N.A. instructed Alvarado to exit the vehicle, to which he refused. DO N.A. subsequently instructed Alvarado to exit the vehicle no less than 5 times and then advised him to look away from the window as they breached it. Alvarado subsequently opened the driver's side door.

13. DO C.H. and SDDO D.G. who were standing on the passenger side, instructed the other occupants (front seat passenger and rear seat passenger) to exit the vehicle. The occupant sitting in the passenger seat, Anderson Josue MARTINEZ-MONTENEGRO, a citizen and national of Guatemala, exited the vehicle and became physically resistant and assaultive, and with a closed

---

[1] The code is given and designated internally by the MVA to denote that the license cannot be used for federal purposes.

fist punched DO C.H. in the face. DO C.H. and DO N.A. utilized a hard technique-takedown to effectuate the arrest, with officers securing MARTINEZ-MONTENGRO in restraints.

14. The occupant in the rear passenger seat, Elmer Cirilo Ortiz-Berduo, was also detained after a prolonged struggled with DOs.

15. SDDO D.G. and DO N.A. required medical treatment for the injuries they sustained from Ortiz-Berduo.

16. On November 29, 2025, at 4:00 p.m., I advised Anderson Josue MARTINEZ-MONTENEGRO in the Spanish Language of his Miranda Rights; read from my government issued Spanish Miranda Rights card. I then asked MARTINEZ-MONTENEGRO if he understood his rights. MARTINEZ-MONTENEGRO stated that he did. I then asked if he was willing to waive his rights and answer my questions at that time without a lawyer present. MARTINEZ-MONTENEGRO stated that he was willing to answer my questions at that time. I further advised MARTINEZ-MONTENEGRO that he could discontinue the questioning at any time if he so desired. MARTINEZ-MONTENEGRO indicated that he fully understood. Supervisory Detention and Deportation Officer Calvin Orem was present for this advisement as well as the entire sworn statement. All questions were asked in the Spanish language and transcribed into English.

17. The following is the sworn statement taken with MARTINEZ-MONTENEGRO:

Officer McIsaac: What is your complete and correct name?
MARTINEZ-Montenegro: Anderson Josue MARTINEZ-Montenegro.

Officer McIsaac: Have you ever used any other names?
MARTINEZ-Montenegro: No.

Officer McIsaac: What country are you a citizen of?
MARTINEZ-Montenegro: Guatemala

Officer McIsaac: Where were you born?
MARTINEZ-Montenegro: I was born in Zone 1 in the capital of Guatemala. I live in Zone 6 now though.

Officer McIsaac: Have you ever applied for legal status in the United States?
MARTINEZ-Montenegro: No.

Officer McIsaac: Have you ever been part of a criminal group or gang?
MARTINEZ-Montenegro: No.

Officer McIsaac: Do any of your tattoos have any gang related ties?
MARTINEZ-Montenegro: No.

Officer McIsaac: Describe to me what happened this morning.
MARTINEZ-Montenegro: We were going to work, and we were already pulled in because we were going to work there. Then the officers pulled in behind us.

Officer McIsaac: Where were you exactly when the officers encountered you?
MARTINEZ-Montenegro: I was in the work truck, a Ford. I was in the passenger seat in the front.

Officer McIsaac: Did you know it was immigration officials behind you?
MARTINEZ-Montenegro: I didn't know they I were immigration officials, I just knew they were police officials.

Officer McIsaac: How did you know? Did they turn on their lights?
MARTINEZ-Montenegro: No, they didn't turn on their lights, but I knew they were police officials because I met them when they came over to the truck and asked for identification.

Officer McIsaac: What did you do when they asked you for identification?
MARTINEZ-Montenegro: I was nervous, then they told me to open the door and get out with my hands up. I got out of the car with my hands up in front of me like they said. Then after getting out, the officer told me to turn around and I began to turn around and he grabbed me with force and I became nervous and turned my body and I did hit the official with my hand when I turned.

Officer McIsaac: Did you intentionally hit the officer?
MARTINEZ-Montenegro: No, when he grabbed me, I just turned and brought my hand back like this (MARTINEZ-Montenegro mimed the actions and made a backwards flinging motion with his hand as he turned his body in the direction of the flinging hand. His hand was displayed in an open position, like a swatting position) and hit him with my hand and I told him not to be so rough with me, I said, "no, don't treat me so rough". It wasn't my intention to hit him, but I know it is a crime.

Officer McIsaac: What did you do after that?
MARTINEZ-Montenegro: I didn't resist at all, when he told me to sit, I sat.

Officer McIsaac: Was there any discussion in the truck about what to do when the immigration officials approached?
MARTINEZ-Montenegro: Francisco told us not to do anything when the official was about to break the window.

Officer McIsaac: Did they give a warning that they were going to break the window?
MARTINEZ-Montenegro: I couldn't understand them.

Officer McIsaac: How did you come to the United States?
MARTINEZ-Montenegro: I crossed through the desert.

Officer McIsaac: How long ago was that?
MARTINEZ-Montenegro: about three and a half years ago.

Officer McIsaac: Did you know it was illegal to enter in that manner?
MARTINEZ-Montenegro: I didn't at the time, but I do now.

Officer McIsaac: Have you ever applied for legal status in the United States?
MARTINEZ-Montenegro: No.

### AUTHORIZATION REQUEST

18.   Based on the above information, I respectfully submit that that there is probable cause to believe that **MARTINEZ-MONTENEGRO** has committed 18 U.S.C. § 111. Accordingly. I request that a criminal complaint and an arrest warrant be issued.

19.   I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*Michael McIsaac*
Michael McIsaac
Deportation Officer
Immigration and Customs Enforcement

Sworn to before me over the telephone and signed by me pursuant to Federal Criminal Procedure Rules 4.1 and 4(d) this __2nd__ day of __December__, 2025.

_____
HONORABLE CHELSEA J. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

9