IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDERSON JOSUE MARTINEZ-MONTENEGRO,<br><br>Defendant. | CRIMINAL NO. 25-mj-03120 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America respectfully requests that the defendant, Anderson Josue Martinez-Montenegro, remain detained pending trial pursuant to 18 U.S.C. § 3142.

**A.   PROCEDURAL HISTORY**

The defendant was charged by criminal complaint with violating 18 U.S.C. § 111 on December 2, 2025. ECF No. 1. That same day, he was brought into custody and had his initial appearance before the Honorable J. Mark Coulson. ECF No. 4. The government moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(A) because the defendant is charged with a crime of violence. The government is also seeking detention based on a serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2). A detention hearing is scheduled for December 4, 2025.

**B.   FACTUAL SUMMARY**

On November 29, 2025, the defendant was the front seat passenger in a vehicle driven by a driver later identified as the defendant's supervisor at work. In the car was a third occupant in the back seat, who is now a co-defendant in this case, Elmer Ortiz-Berduo. The Deportation Officers ("Officers") at the scene had just finished a relatively uneventful stop of another vehicle at a construction worksite. ECF No. 1 at ¶ 11. While still at the worksite, a second vehicle pulled

1

into the worksite and the Officers observed the defendant slump down and bring his arm up to obscure his face. *Id.* The Officers approached the vehicle and Officer N.A. approached the driver to ask for identification. Meanwhile, Officer C.T. was running database searches on the vehicle. *Id.* The database searches revealed that the vehicle was registered to the driver and that the driver's license has an "AU" code, which denotes that the license "may not be used to purchase a firearm" and is "not acceptable for federal purposes." *Id.* After several minutes of noncompliance, the driver lowered the window of the vehicle slightly and handed his driver's license to Officer N.A., and his identity and immigration status were confirmed.

On the other side of the vehicle, however, the defendant, in the front passenger seat, was asked to step out of the vehicle around the same time that the driver was instructed to step out of the vehicle. The defendant exited the vehicle with his hands raised. Officer C.H. placed the defendant's hands behind his back without restraints. Officer C.H. used his own hands to secure those of the defendant's by holding them with his own. As Officer C.H. held the defendant's hands behind the defendant's back, he told the defendant to relax and to be calm, in English and Spanish, respectively. The Officers then started closing the front passenger door (from which the defendant exited) and, at the same time, opened the door to the back seat. As they opened the rear passenger door, Ortiz-Berduo jumped out of the back seat and began to run. From the time Officer C.H. secured the defendant's hands until Ortiz-Berduo began to run, approximately 30 seconds have elapsed.

Officer C.H., still holding the defendant's hands, turned towards the direction that the Ortiz-Berduo ran. Three other Officers had already run after Ortiz-Berduo. The defendant, knowing that Officer C.H. was alone, took the opportunity to break free from Officer C.H.'s grasp, turned just enough to see Officer C.H.'s face, raised his hand in a fist, and punched Officer C.H.

on the left side of his head. Officer C.H. had visible bruising at his temple because of this blow to the head. The defendant struggled with Officer C.H., who was unable to restrain the defendant by himself. Officer C.H. yelled for help, and Officer N.A. yelled, "I got you!" and ran towards the struggle. Officer N.A. then secured the defendant on the ground and placed the defendant in handcuffs.

The defendant was later Mirandized and interviewed in Spanish, and he admitted to striking Officer C.H., but claimed it was an accident. *See* ECF No. 1. The defendant stated that the officer "told me to turn around and I began to turn around and he grabbed me with force and I became nervous and turned my body and *I did hit the official with my hand* when I turned." *Id.* (emphasis added). When asked, "did you intentionally hit the officer?", the defendant stated, "No [he did not intend to hit the officer], when he grabbed me, I just turned and brought my hand back like this [the defendant mimed the actions and made a backwards flinging motion with his hand as he turned his body in the direction of the flinging hand. His hand was displayed in an open position, like a swatting position] and hit him with my hand and I told him not to be so rough with me, I said, 'no, don't treat me so rough.'" *Id.*

C.     **BODY WORN CAMERA FOOTAGE SUMMARY**

In support of its motion, the government submits the body worn camera footage from the incident in addition to the summary above. *See* Exhibits 1a–1c. The key moments pertaining to the defendant are highlighted in three charts below, including cross-references where matching the events across videos are helpful.

| Time (Victim Officer C.H.'s body worn camera) File Name: "…A4865B.mp4" | Description |
|---|---|
| 0:30 | C.H. arrives at the vehicle on the passenger's side. The back seat passenger, co-defendant Ortiz-Berduo, is visible |

| Time (Victim Officer C.H.'s body worn camera) File Name: "…A4865B.mp4" | Description |
|---|---|
|  | through the window.  C.H. says nothing as the driver and another officer are talking on the other side of the vehicle. |
| 1:40 | C.H. moves so that the camera sees more of the front passenger, the defendant, Martinez-Montenegro, and driver of the vehicle, who is not charged.  Another officer is visible through the windows standing on the driver's side. |
| 1:44 | C.H. knocks on the front passenger's side window to get the defendant's attention.  The defendant turns and looks at C.H.  C.H. gestures with his right hand, pointing downward, and instructs C.H. to lower the window.<br><br>The defendant looks forward and ignores the instruction.  C.H. says "now."  Camera pans away from vehicle. |
| 1:53 | Camera returns to the vehicle and the defendant is seen looking out of the window behind him towards where the camera was facing a moment ago.  The defendant looks briefly at C.H. and then turns back to the front. |
| 1:59 | The defendant removes his gloves and places them on the dashboard. |
| 2:29 | C.H. asks another officer if the driver has a consular I.D. |
| 2:37 | The defendant pulls out his phone and begins typing. |
| 2:41 | The defendant makes a phone call and holds the phone up to his right ear with his right hand. |
| 3:36 | The defendant ends his phone call or briefly hits redial (he presses a button). |
| 3:39 | The defendant raises the phone up to his right ear with his right hand. |
| 4:03 | The defendant lowers his hand with his phone, taps, and then puts his phone away. |

| Time (Victim Officer C.H.'s body worn camera) File Name: "…A4865B.mp4" | Description |
|---|---|
| 4:04 | The defendant says something to the occupants of the vehicle. |
| 4:14 | Officer at the window on the driver's side instructs the driver to "look that way." His voice is audible on this recording. |
| 4:16 | C.H. puts his hand on the door handle on the front passenger's door. |
| 4:18 | C.H. pulls on the door handle. An audible click of the handle is heard. The door is locked. |
| 4:22 | Another officer is heard instructing the driver, "get out of the car." That is repeated several times by two officers. |
| 4:26 | Another officer approaches C.H. with a tool, attempting to use it on the window. |
| 4:30 | C.H. instructs the defendant, "unlock it, get out" and then in [incorrect] Spanish, "vamase." |
| 4:33 | The camera shows the defendant exiting the vehicle, showing his hands. C.H. tells him "come here" and "relax" while securing the defendant's hands behind his back. The camera shows that C.H. is positioned directly behind the defendant and the defendant's hands are visible. |
| 4:46 | C.H. says to the defendant in Spanish, "tranquilo." Tranquilo means calm. |
| 4:50 | Another officer is heard saying, "nah, nah, you stay." |
| 4:53 | There is a brief struggle between C.H. and the defendant as the defendant's hands come from behind his back and are secured again. |
| 4:55 | An officer is heard saying, "Need some help please." |

| Time (Victim Officer C.H.'s body worn camera) File Name: "…A4865B.mp4" | Description |
|---|---|
| 4:57 | An officer is heard saying something to the effect of "what are you fucking doing?" And there are many "no"s being spoken by someone. |
| 4:58 | The charge of a taser is heard. |
| 5:02 | An officer is heard saying, "get him, get him!" |
| 5:03 | More "no"s are said. |
| 5:05 | The camera moves from behind the defendant and C.H. and the defendant are turning counterclockwise away from the vehicle. |
| 5:07 | C.H. yells, "STOP!" and a struggle ensues, camera covered. |
| 5:10 | A guttural yell is heard. |
| 5:11 | C.H. yells, "need some fucking help!" |
| 5:16 | Struggle ends and another officer has arrived to help. |
| 5:20 | Another officer instructs the defendant to get down twice and warns that he would get punched otherwise. |
| 5:23 | Camera shows the defendant being lowered to the ground. |
| 5:24 | The other officer (N.A.) yells, "get down!" and the charging of a taser is heard. The taser is visible in C.H.'s left hand. |
| 5:27 | The other officer (N.A.) yells, "get down!" and the camera shows the defendant on the ground with the other officer standing over him. C.H.'s hands are visible handling a charged taser. |
| 5:28 | The defendant is on the ground with his hands behind his back and the other officer's knee on his back. C.H. has the taser pointed in the defendant's direction at his back. |

| Time (Victim Officer C.H.'s body worn camera) File Name: "…A4865B.mp4" | Description |
|---|---|
| 5:30 | C.H. says something about checking on the driver and leaves to see the driver. |
| 5:40 | The driver is visible sitting with his hands in the air. |

| Time (Victim Officer N.A.'s body worn camera) File Name: "…A4939D.mp4" | Description |
|---|---|
| 0:29 | N.A. approaches the driver side of the vehicle and the driver is first visible on camera looking back at N.A. as he approaches from the back. |
| 0:31 | N.A. gestures by pointing down. |
| 0:33 | The driver reaches and presses a button, cracking the window slightly. |
| 0:34 | N.A. asks if the driver has I.D. on him. |
| 0:45 | After some back and forth, N.A. states that he can't understand the driver and asks that the window be rolled down more, gesturing with a finger pointed down. |
| 0:52 | N.A. tries the door and repeats "I said could you roll the window down more" |
| 1:00 | N.A. states that he cannot understand the driver. "I asked for your I.D. and you're just mumbling." |
| 1:42 | N.A. explains that if the window is not rolled down, he is going to break the glass, asking if the driver understands. |
| 1:45 | N.A. repeats, "I'm asking you nicely. Roll your window down or I'm going to break the glass," while making the same gesture as before with his finger. C.H. is seen knocking on the front passenger side window (*see* 1:44 of C.H.'s body worn camera). |

| Time (Victim Officer N.A.'s body worn camera) File Name: "…A4939D.mp4" | Description |
|---|---|
| 1:49 | Across the way, C.H. is visible gesturing at the front passenger side window. *See* C.H. BWC at 1:44. |
| 1:53 | Another officer (possibly C.T.) is heard stating, "not for Fed" and telling the officers that he will run additional checks. |
| 2:17 | The driver hands his I.D. through the crack of the window to N.A. |
| 2:27 | N.A. asks for the driver's other I.D. from Mexico or Guatemala, explaining "we know." |
| 2:33 | N.A. asks for a consular I.D. |
| 3:00 | The driver is seen on camera going through his wallet. |
| 3:15 | N.A. asks the driver to "get out of the car so we can talk to you." |
| 3:57 | N.A. says this is the fourth time asking to get out of the vehicle or will break the glass. |
| 4:07 | The defendant is seen putting his phone away. *See* C.H. BWC at 4:03. |
| 4:18 | N.A. instructs the driver to "Look that way." *See* C.H. BWC at 4:14. |
| 4:25 | N.A. says "get out of the car." This instruction is repeated by other officers. *See* C.H. BWC at 4:22. |
| 4:31 | The defendant is seen turning towards the front passenger side window. *See* C.H. BWC at 4:26-4:30. |
| 4:34 | The front passenger door is visible as being slightly open on camera. *See* C.H. BWC at 4:30. |
| 5:00 | N.A. tells the driver to get in the car. *See* C.H. BWC at 4:55. |

| Time (Victim Officer N.A.'s body worn camera) File Name: "…A4939D.mp4" | Description |
|---|---|
| 5:02 | Charge of a taser is heard from other side of vehicle. *See* C.H. BWC at 4:58. |
| 5:04 | N.A. tells the driver to stay. |
| 5:05 | The defendant is visible standing with his hands behind his back in front of a dumpster and in front of C.H. |
| 5:05 | In the next frame, the defendant's knees are bending as an officer is visible with a taser in an outstretched right hand. |
| 5:06 | "No"s are heard. *See* C.H. BWC at 5:03. |
| 5:08 | The camera shows a running co-defendant Ortiz-Berduo with two officers in pursuit, including the one with a taser. |
| 5:09 | N.A. says no several times as the co-defendant is brought to the ground. |
| 5:10 | Charge of the taser is heard, coming from the taser that is visible on camera. |
| 5:11 | Co-defendant yells. |
| 5:12 | A yell comes from C.H. and the defendant. N.A. says "I got you" and starts running in their direction. |
| Until 5:30 | N.A. subdues the defendant, yelling "get down" multiple times in the process. |
| 5:55 | N.A. puts handcuffs on the defendant. |

| Time (Officer C.T.'s body worn camera) File name: "…D01A4931K.mp4" | Description |
|---|---|
| 0:29 | C.T. joins N.A. at the driver's side window. |
| 0:33 | N.A. is heard saying "look that way." *See* N.A. BWC at 4:18. |
| 1:11 | C.T. says "hey you got him" and begins moving to the other side of the vehicle. Then says "I'm comin' around." |
| 1:14 | C.T. runs as the camera shows that the defendant has his hands secured behind his back, the door of the vehicle still open. C.T. grabs the handle of the open car door. |
| 1:15 | As C.T. starts closing the door, another voice is heard saying, "what are you fucking doing." *See* C.H. BWC at 4:57. |
| 1:18 | The camera shows that the back seat is being opened as the front door is being closed. The charge of a taser is both heard and seen. *See* C.H. BWC at 4:58. |
| 1:20 | The co-defendant is visible beginning to run from the back seat and someone yells "get him get him!" *See* C.H. BWC at 5:02. |
| 1:21 | C.T. grabs the co-defendant with his left hand. |
| 1:29 | A distant yell is heard, followed by N.A. saying "I got you I got you." *See* N.A. BWC at 5:12. |
| 16:34 | C.T. takes photographs of injuries, including head abrasion, head bruising from punch to the head, and thumb injury. |
| 17:20 | Paramedics arrive for transport. |

### D.   LEGAL STANDARD

The totality of the circumstances weighs in favor of detaining the defendant. The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. Pursuant to 18 U.S.C. § 3142(f)(1)(A), the government can move for detention in cases where the offense charged is a

crime of violence. Alternatively, under 18 U.S.C. § 3142(f)(2)(A), the government can also move for detention where a case involves a serious risk that such person will flee.

The factors that a judicial officer shall consider, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning: (1) the nature and circumstances of the offense charge, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

The charged violation is a crime of violence because the facts support a violation of 18 U.S.C. § 111 where the use, attempted use, or threatened use of physical force against another person is categorically an element of the offense. This defendant's use of force against an officer was a punch to the head, which can satisfy the elements under 18 U.S.C. § 111(b), including the element of inflicting bodily injury. The last amendment to 18 U.S.C. § 111 was the Federal Judiciary Protection Act, enacted in the 107th Congressional term. The purpose of the Act was to "increase the criminal penalties for assaulting or threatening Federal judges, Federal law enforcement officers, U.S. officials, and their family members." S. Rept. 107-53. That amendment increased the statutory maximum penalty from three years to eight years in cases of forcible assault, resistance, intimidation, or interference with a Federal judge, Federal law enforcement officer, or U.S. official and, in cases where a deadly or dangerous weapon or bodily injury was inflicted, increased the maximum from 10 years to 20 years.

E.   ANALYSIS OF 18 U.S.C. § 3142(g) FACTORS

*Nature and Circumstances of the Offenses Charged:*

The defendant's actions are serious and go to the heart of the purpose behind Congress's enactment of 18 U.S.C. § 111, which was to protect federal officials conducting their official duties. The Officers that approached the vehicle in which the defendant was a passenger were acting in the course of their official duties. Officer C.H. initially successfully had the defendant exit the vehicle and stand in front of him with his hands secured behind him. The defendant is visible standing in this position on Officer C.T.'s body worn camera. It is only after about 30 seconds have passed, and the co-defendant begins running from the car, that the defendant (1) sees the co-defendant running; (2) turns towards Officer C.H.; and (3) punches Officer C.H. in the head. Due to the timing, it is clear that the defendant saw that the co-defendant was running and then decided to punch Officer C.H. in an effort to escape himself.

An analysis of the defendant's post-arrest statement that he accidentally struck Officer C.H. with an open hand demonstrates that the defendant was untruthful. In the defendant's retelling, a miscommunication occurred immediately after he exited the vehicle. The body worn camera, however, shows that he was compliant for a time before making a decision to turn around and punch Officer C.H. The injury to Officer C.H.'s head also supports more than a flinging hit with an open hand going backwards. Officer C.H. had bruising to the side of his head that would have required more force than the defendant claims he used. An accidental slap would not have caused a contusion on the head.

In Officer C.H.'s body worn camera at 2:41, the defendant is seen using his right hand to speak on the phone. The defendant's right-handedness further supports Officer C.H.'s account of

what occurred, in that the defendant would have used a closed right fist to strike the left side of Officer C.H.'s head.

The nature and circumstances of the offense show three key facts about the defendant: (1) that he resorted to violence against Officer C.H.; that (2) such violence was used after he had time to deliberate and was intentional; and (3) he was desperate enough to escape that he used violence to attempt to do so.

*Weight of the Evidence Against the Person:*

Here, the defendant already admits that in the course of a struggle, he struck Officer C.H. The bodily injury to Officer C.H. is also visible. In addition, the body worn camera supports the account of events that Officer C.H. gave while contradicting the defendant's version of events that paints him in the most favorable light. This factor weighs in favor of detention.

*History and Characteristics of the Person:*

The defendant has no criminal history but his actions in this case demonstrate that when he has an incentive to flee, he can resort to violence. The defendant was not facing a significant maximum penalty when he struck Officer C.H. to flee. But now the defendant knows that he faces potentially up to 20 years in prison. He admitted when interviewed that he knew that striking an officer is illegal. Yet that knowledge did not stop him. Although many similarly situated defendants are deterred by law enforcement custody and do not strike law enforcement when being held, this defendant is not.

*Nature and Seriousness of the Danger to Any Person or the Community:*

The defendant's willingness to strike a law enforcement officer shows that he has a lack of regard for the law and with authority. Even while he is physically restrained, he intentionally breaks free to then strike Officer C.H. He could have run without striking but instead sought to

incapacitate. Similarly, when interviewed after being taken into custody, he continued to demonstrate a lack of respect for authority by giving an untruthful, self-serving statement to Officer McIsaac. Because of the defendant's pattern of disregard of authority, there are no conditions that the Court can set that the Court would also be reasonably assured would be followed by the defendant.

G.     CONCLUSION

For the reasons stated above, and for any other presented at the detention hearing, there is no condition or combination of conditions that would reasonably assure the appearance of the defendant, and Anderson Josue Martinez-Montenegro should be detained pending trial.

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

Digitally signed by VICTORIA LIU
Date: 2025.12.03 18:42:42 -05'00'

Victoria Liu
Assistant United States Attorney